IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | Case No. 3:25-cr-50 |
| v. | : | JUDGE WALTER H. RICE |
| JOSE ANTONIO ALVARENGA | | |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS INDICTMENT (DOC. #14) AND STAYING ALL FURTHER DEADLINES UNTIL THE CONCLUSION OF DEFENDANT'S ADMINISTRATIVE PROCESS

---

This case is before the Court on Defendant Jose Antonio Alvarenga's ("Defendant") Motion to Dismiss Indictment. Doc. #14. At the Court's direction, Defendant filed a Supplement to the Motion to Dismiss, Doc. #18, the United States (the "Government") filed a response in opposition to the motion, Doc. #22, and Defendant filed a reply memorandum in support of his motion. Doc. #24.

For the reasons stated herein, the Court finds that Defendant must completely exhaust his administrative remedies before this issue becomes ripe. For that reason, the Court OVERRULES WITHOUT PREJUDICE Defendant's Motion to Dismiss Indictment, Doc. #14, with leave to refile once the administrative proceedings have ended. All further deadlines are stayed pending the outcome of

Defendant's appeal before the Board of Immigration Appeals. The Parties are instructed to file a joint status report every 60 days detailing the status of Defendant's appeal.

## I. Procedural and Factual Background

In March 2012, Defendant, a native of El Salvador, was arrested during an operation conducted by the Immigration and Customs Enforcement ("ICE") Fugitive Operations Team at 148 Hammond Road, Mars, PA. Though he was not the target of this operation, Defendant was taken to the Department of Homeland Security ("DHS") office in Pittsburgh, Pennsylvania. While at the DHS office, Defendant was served with a Notice to Appear ("NTA") for his removal proceedings. Importantly, the NTA did not state when his hearing would take place and listed his address as 148 Hammond Road, the same location from which he was arrested.

On April 12, 2012, DHS mailed a Notice of Hearing ("NOH") to the 148 Hammond Road address, informing Defendant that his removal hearing would be conducted on May 9, 2012. However, Defendant did not receive this notice. The removal hearing was conducted nonetheless, and Defendant was ordered to be removed *in absentia*. Once this order was entered, notice was sent to Defendant's employer instructing the employer to present Defendant to the DHS facility in Pittsburgh by May 31, 2012. Defendant was successfully presented to the DHS

facility by the deadline imposed. Defendant was ultimately deported on August 10, 2012.

On June 10, 2025, a grand jury indicted Defendant on a single count: reentry of a removed alien in violation of 8 U.S.C. §1326(a). Doc. #2. Defendant now seeks to collaterally attack this charge by showing that the prior removal was improper.

## II. Analysis

The current three-prong collateral attack approach outlined in §1326(d) was passed by Congress in light of the Supreme Court's decision in *United States v. Mendoza-Lopez*. In *Mendoza-Lopez*, the Court had to grapple with the idea that a determination made in an administrative proceeding played a critical role in a subsequent criminal proceeding. *Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987). The Court recognized that an element of a criminal charge, which requires proof beyond a reasonable doubt, could not be premised on an immigration judge's finding alone, a finding which required merely clear and convincing evidence. *Id.* at 837–40; *see Woodby v. INS*, 385 U.S. 276 (1966) (finding that deportability must be established by evidence which is clear, unequivocal, and convincing). On those grounds, the Court stated that collateral attack of the removal order must be permitted. *Mendoza-Lopez*, 481 U.S. at 839. Against that backdrop, Congress enacted §1326(d), laying out the grounds by which defendants may collaterally attack their prior removal order.

3

Defendant's Motion to Dismiss seeks to use this mechanism of collateral attack to challenge his prior removal. Doc. #14, PageID #42. In order to challenge the prior deportation order, Defendant must demonstrate that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. §1326(d). "These requirements are conjunctive, meaning [Plaintiff's] failure to satisfy any one of them defeats his collateral challenge." *United States v. Flores-Perez*, 1 F.4th 454, 457 (6th Cir. 2021).

### A. Exhaustion of Administrative Remedies

To successfully challenge his prior removal, Defendant must first show that he has exhausted any administrative remedies that may be available to seek relief against the prior deportation order. 8 U.S.C. §1326(d)(1). The Sixth Circuit has confirmed that this requirement may not be overlooked. *United States v. Flores-Perez*, 1 F.4th 454, 457 (6th Cir. 2021).

Defendant argues that his collateral challenge should not be dismissed in this case because he is actively pursuing the administrative remedies in parallel proceedings. In fact, since the initial filing of Defendant's motion to dismiss, the Immigration Court has denied his motion to reopen the prior proceedings and he has filed an appeal before the Board of Immigration Appeals.

4

Defendant separately argues that the statute merely requires him to exhaust administrative remedies that are *available* to him. As he argues, the fact that the removal proceeding occurred, even knowing that he did not have notice of the hearing, denied him the ability to apply for an administrative remedy in a timely manner. Doc. #24, PageID #133. This argument, however, is foreclosed by *Flores-Perez*. As that case pointed out, "the relevant statutory scheme expressly contemplates how a noncitizen can proceed in the event of insufficient notice." *Flores-Perez*, 1 F.4th at 458 (citing 8 U.S.C. §1229a(b)).

Recognizing that his administrative challenge is still unfolding, Defendant asks this Court to hold the present motion in abeyance until the conclusion of those proceedings. Doc. #24, PageID #134. The Government does not believe that holding this motion in abeyance until the conclusion of the administrative proceedings is necessary. Under its view, Defendant has initiated his administrative options but has not yet *exhausted* his options, rendering him unable to meet the text of the subsection. Doc. #22, PageID #111.

In *Palomar-Santiago*, the Supreme Court compared the exhaustion requirement of 8 U.S.C. §1326(d)(1) to other exhaustion requirements elsewhere in the United States Code. *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021); *see Ross v. Blake*, 578 U.S. 632 (2016) (discussing exhaustion under the PLRA). Notably, Mr. Palomar-Santiago did not attempt to exercise his

5

administrative remedies even in parallel proceedings, arguing instead that the flaws in the underlying removal order excuse his failure to strictly adhere to the statute. The same is not true here.

Here, the Court must determine the effect of the fact that Defendant has begun the process by which he will exhaust his administrative remedies. Neither of the parties cite to a case in which this posture presents itself in a case involving §1326, and the Court has been unable to locate such a case itself. Instead, the Court will have to rely on other cases involving exhaustion of administrative remedies to determine how to apply this element.

In *Rhines v. Weber*, the Supreme Court examined whether habeas corpus petitions brought after AEDPA's 1-year statute of limitations should be held in abeyance if the petitioner had not yet fully exhausted his administrative remedies prior to filing. 544 U.S. 269 (2005). This abeyance procedure was especially important because if it were determined that a petitioner had not fully exhausted his other options before filing the petition, it was unlikely that he would be able to complete the exhaustion process before the statute of limitations had run. In other words, if petitioners were not able to stay their habeas proceedings, many of them would not be able to bring a later proceeding and would lose the cause of action altogether. In *Rhines*, the Court found that holding a case in abeyance to permit exhaustion is appropriate, assuming that such an order requires the party to act

diligently in seeking exhaustion and returning to the district court once exhaustion has been completed. *Id.* at 277; *see Rose v. Lundy*, 455 U.S. 509, 522 (1982) (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief.").

On the other hand, plaintiffs who bring claims under the Prison Litigation Reform Act ("PLRA") are often denied stays if they have not fully completed the exhaustion of administrative remedies before filing their case. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Scofield v. Mendham*, No. 1:23-cv-239, 2023 WL 2661114 (W.D. Mich. Mar. 28, 2023). Key to the reasoning behind these denials is an understanding that the relevant statute's use of "exhausted" necessitates a finding that the process has already been completed. *Freeman*, 196 F.3d at 645.

There are clear similarities between *Freeman* and Defendant in this case. In both, the party attempted to go through the administrative remedies during the pendency of the federal case. However, one stark difference is that the plaintiff in *Freeman* chose to file his action without having completed the exhaustion. In the line of PLRA cases focusing on exhaustion, courts hold plaintiffs responsible for the failure to complete exhaustion before taking the affirmative step of filing their own complaint. However, the habeas line of cases employs different reasoning based, in part, on the fact that the party seeking a stay to complete their exhaustion process

7

does not have the option to refile once exhaustion has been completed. This distinction looms large in the mind of the Court.

Here, the United States chose when to bring charges against Defendant and begin this case. As with most criminal cases, Defendant was not warned nor was he afforded the option to choose when this proceeding was brought and, therefore, could not have chosen to delay this case until the administrative proceedings came to an end. The Court is convinced that the reasoning and rationale applied to habeas petitioners must also apply to Defendant. As stated, Defendant was not afforded the luxury to choose when to make his arguments in federal court. Thus, the only thing he can do is put them forward now and ask that the Court hold them until he has completed the administrative process. To do anything else would be to permanently deprive him of the statutory defense to which he is entitled.

### B. Deprivation of Judicial Review

The second element Defendant must show is that the deportation proceedings at which the order removal order was issued improperly deprived the alien of the opportunity for judicial review. 8 U.S.C. §1326(d). This element focuses on whether he is able to seek judicial review of his removal order by appealing an adverse BIA decision, concluding the BIA appellate process, to the appropriate Federal Court of Appeals. *See Palomar-Santiago*, 593 U.S. at 327. However, Defendant does not yet have a BIA final decision on his case and, resultingly, the

8

opportunity to appeal his case to a Federal Court of Appeals and thereby receive the judicial review required, has not yet come to pass. Therefore, like the first factor, the second factor cannot yet be ascertained and calls for a temporary stay while the administrative process plays out.

### C. Fundamental Unfairness

Assuming that Defendant eventually satisfies the first two elements, he may find success on the third element as well. The third element requires him to show that the entry of the order of removal was fundamentally unfair. 8 U.S.C. §1326(d). In practice, this element requires Defendant to show that (1) there was a due process violation resulting from defects in the underlying deportation proceeding, and (2) that he was prejudiced as a result. *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017).

The Ninth Circuit, sitting en banc, recently reviewed whether an alien who does not receive actual notice suffers a due process violation. *United States v. Rivera-Valdes*, 157 F.4th 978 (9th Cir. 2025) (en banc). The resulting decision held that when the government knows that the alien did not receive notice and does not take any additional steps to attempt to provide notice, the aliens' due process rights have been violated. *Id.* at 993. The analysis in that opinion, while not binding on this Court, is persuasive.

Even still, Defendant would need to show that in addition to the due process deprivation, he was prejudiced as a result. Defendant attempts to make that showing here by arguing that, had he known and attended the removal hearing, he may have been able to successfully argue for voluntary departure, based on his lack of criminal history. This argument may be effective, but the Court declines to rule on it at this time when the other two factors cannot be evaluated.

Ultimately, the Court therefore finds good cause to hold this motion in abeyance until one of two events occur. The first event triggering the end of the stay would be if Defendant completes full exhaustion of his administrative remedies, including any possible appeal to a Federal Circuit Court which may be permitted by law. In this case, the first two factors will then, and only then, become ripe for the Court to decide the issue. The second event which will trigger the end of the stay would be if Defendant abandons the administrative appeal process currently underway. In that event, Defendant will have failed to establish both of the first two elements and his collateral attack will be declared unsuccessful, no matter how unfair the process.

### III. Conclusion

For the foregoing reason, the Court finds that Defendant must completely exhaust his administrative remedies before this issue becomes ripe. For that reason, the Court OVERRULES WITHOUT PREJUDICE Defendant's Motion to

Dismiss Indictment, Doc. #14, with leave to refile once the administrative proceedings have ended. All further deadlines are stayed pending the outcome of Defendant's appeal before the Board of Immigration Appeals and any Federal Circuit Court review should the BIA's decision be adverse to Defendant. The Parties are instructed to file a joint status report every 60 days detailing the status of Defendant's appeal.

Date: December 8, 2025          *Walter H. Rice*

                                              WALTER H. RICE
                                              UNITED STATES DISTRICT JUDGE